[Cite as *State v. Overmeyer*, 2015-Ohio-4479.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-15 |
| ROBERT OVERMEYER (NOA) | : |  |
| (OVERMYER) | : |  |
|  | : | O P I N I O N |
| Defendant-Appellant | : |  |

CHARACTER OF PROCEEDING:        Criminal appeal from the Licking County
                                Municipal Court, Case No. 14-TRC-03110

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         October 27, 2015

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

AMY S. DAVISON                  ANDREW SANDERSON
40 West Main Street             73 North Street
Newark, OH  43055               Newark, OH 43055

*Gwin, P.J.*

**{¶1}** Appellant Robert Overmeyer ["Overmeyer"] appeals his conviction and sentence after a bench trial in the Licking County Municipal Court for Operating a Motor Vehicle while Impaired in violation R.C. 4511.19(A)(1)(d).

*Facts and Procedural History*

**{¶2}** Overmeyer stipulated he was operating a motor vehicle on December 13, 2014. In the course of that operation, an Ohio Highway Patrol trooper observed Overmeyer. Overmeyer provided a sample of his breath for chemical testing and the trooper reported the test results as 0.081 BAC. All of this occurred in Licking County, Ohio.

**{¶3}** In a proffer, Overmeyer placed in the record that testimony from the trooper would have revealed that Overmeyer was not showing signs of impairment at the time of the offense at issue. Further, it was proffered into the record that the calibration of the BAC Datamaster used to measure the sample collected from Overmeyer is calibrated to plus or minus 0.003 and that Mr. Overmeyer's personal sample was less than 0.003 over the legal limit.

**{¶4}** Overmeyer was charged with two counts of Operating a Motor Vehicle while Impaired, "under the influence" in violation of R.C. 4511.19(A) (1) (a); and "prohibited level" in violation of R.C. 4511.19(A) (1) (d).

**{¶5}** On March 3, 2015, prior to the commencement of trial, the state dismissed the R.C. 4511.19(A) (1) (a) charge. Overmeyer then waived his right to a trial by jury and the matter was tried to the court.

**{¶6}** Prior to the commencement of the same, the trial court issued several, *in limine* rulings regarding the introduction of evidence during the trial. Pertinent to the instant appeal, the trial court precluded any evidence and testimony regarding Overmeyer's lack of impairment at the time of the alleged offense and that his BAC test result was less than "0.003" over the legal limit and, finally, that the machine in question is calibrated to within "+/- 0.003".

**{¶7}** Following a stipulation to the evidence, Overmeyer was convicted of a violation of R.C. 4511.19(A) (1) (d). The trial court then sentenced the Overmeyer to a term of incarceration, a mandatory fine and a period of probation.

*Assignments of Error*

**{¶8}** Overmeyer raises one assignment of error,

**{¶9}** "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN PROHIBITING THE DEFENDANT-APPELLANT FROM PRESENTING A DEFENSE BELOW."

*Analysis*

**{¶10}** Overmeyer maintains that he should have been permitted to introduce evidence and testimony in his "per se" OVI case that he did not show signs of impairment at the time of the alleged offense and further, the trial court erred in refusing to allow Overmeyer to introduce evidence related to the "margin of error" in the calibration of the machine used to test the sample of his breath.

**{¶11}** "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. The court of appeals committed error when it reversed the trial court's ruling. The admissibility of evidence rests within the

sound discretion of the trial judge and should not be disturbed in the absence of a clear abuse of discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 407 N.E.2d 490(1980); *Calderon v. Sharkey*, 70 Ohio St.2d 218, 223, 436 N.E.2d 1008(1982) ("close evidentiary questions are within the domain of the trial court"); *Beard v. Meridia Huron Hosp.,* 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E. 2d 323, ¶ 20.

{¶12} Evid.R. 103(A) requires any claim of error relating to the exclusion of evidence to (1) affect a substantial right of the party and (2) the substance of the excluded evidence must be made known to the court by proffer or should be apparent from the context within which questions were asked.

{¶13} "The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant." *In re Walker*, 162 Ohio App.3d 303, 2005–Ohio–3773, 833 N.E.2d 362 (11th Dist.), ¶ 37; *State v. Mullins*, 2nd Dist. Montgomery No. 21277, 2007–Ohio-1051, ¶ 36.

### *Evidence of non-impairment*

{¶14} In *State v. French,* 72 Ohio St.3d 446, 449, 1995-Ohio-32, 650 N.E.2d 887, the Ohio Supreme Court held that a defendant must use a motion to suppress in order to contest the admissibility of blood-alcohol test results on foundational grounds that relate to compliance with the directives of the Director of Health. Specifically, if the defendant contends that the test is not admissible because: (1) the sample was not withdrawn within two hours of the time of the alleged violation; (2) the analysis was not conducted in accordance with methods approved by the Director of Health; or (3) the test was not conducted by a qualified permit holder, the defendant must file a motion to suppress.

*French,* supra, at paragraph one of the syllabus. Failure to do so or, alternatively, failure to succeed on the merits of the motion will result in admission of the test results without the necessity of the State laying a foundation on these issues. *Id.*

**{¶15}** However, *French* specifically states that a defendant may challenge blood-alcohol test results at trial under the Rules of Evidence. *Id.* at 452, 650 N.E.2d 887. "Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised at trial." *Id.; State v. Edwards,* 107 Ohio St. 3d 169, 171, 2005-Ohio-6180 at ¶ 16, 837 N.E. 2d 752, 757; *State v. Luke,* Franklin App. No. 05AP-371, 2006-Ohio-2306, ¶ 26. *Accord, Cincinnati v. Ilg,* 141 Ohio St.3d 22, 2014-Ohio-4258,  21 N.E.3d 278, ¶24.

**{¶16}** In *State v. Vega*, the Ohio Supreme Court has explained what type of evidence a defendant may rely upon at trial,

Under the statute, the accused may introduce any other competent evidence bearing upon the question of whether he was under the influence of intoxicating liquor. Rebuttable evidence may include non-technical evidence of sobriety, such as a videotape or testimony by the accused or by witnesses concerning the accused's sobriety and the amount of consumption, as well as technical evidence, such as additional chemical tests and the completion of field sobriety tests. There is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator. *See, e.g., Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 330 N.E.2d 908 [72 O.O.2d 44]. Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is

allowed. *Accord State v. Brockway, supra*, 2 Ohio App.3d at 232, 441 N.E.2d 602. Since the presumption is rebuttable and the defendant may go forward with evidence, the "* * * [d]efendant cannot be heard to complain that the provisions of R.C. 4511.19 eliminate his presumption of innocence or hamper the presentation of his defense." *State v. Myers*, supra, 26 Ohio St.2d at 201, 271 N.E.2d 245.

12 Ohio St.3d 185, 189, 456 N.E.2d 1303(1984)[1].

**{¶17}** Even if we assume that the trial court abused its discretion in refusing to admit testimony concerning Overmeyer's performance on certain of the Standardized Field Sobriety Tests (SFST), reversal would not be warranted in this case. In *Beard v. Meridia Huron Hosp.,* the Ohio Supreme Court set forth the following standard,

An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice. *O'Brien*, 63 Ohio St.2d at 164–165, 17.O.O.3d 98, 407 N.E.2d 490. "'Generally, in order to find that substantial justice has been done to [a party] so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision.' " *Id., quoting Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph three of the syllabus.

---

[1] R.C. 4511.19 was amended subsequent to the decision in *Vega* to eliminate the term "presumption". *City of Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988).

{¶18}  Concerning the SFST's in the case at bar, the trooper received all six clues on the Horizontal Gaze Nystagmus (HGN) test. The trooper reported a "strong odor of an alcoholic beverage" on Overmeyer's breath. Overmeyer admitted to the officer that he had consumed "a couple of beers earlier."

{¶19}  Thus, the trier of fact would have heard the bad as well as the good concerning the trooper's encounter with Overmeyer and Overmeyer's indicia of impairment.

### Error Existing In Blood Alcohol Testing By the BAC Datamaster Machine.

{¶20}  In *State v. Schuck*, the Ohio Supreme Court rejected Overmeyer's contention and provided the following analysis,

> In vacating defendants' convictions, the court below essentially held that the intoxilyzer is only as accurate as the limits stated in its design specifications, and that the margin for error described therein was such that the test results for both defendants could not constitute sufficient evidence of prohibited alcohol concentration. The state argues that this holding fails to recognize the crucial fact that design specifications are only an estimate of possible error. The exact level of accuracy of a particular intoxilyzer at a particular time is readily verifiable by reference to calibration checks. These checks are regularly conducted for every intoxilyzer. They involve testing a solution, the alcohol concentration of which is already known to the tester. The reading given by the intoxilyzer from this solution is then compared to the actual known alcohol concentration. The range of accuracy is thereby established.

We agree with the state's contention that, in analyzing the accuracy of a particular intoxilyzer reading, a court may not rely solely on the intoxilyzer's design specifications where data from calibration checks have been properly submitted. In holding that the intoxilyzer results were not necessarily precise enough to sustain a conviction, the court below relied on the least reliable measure of accuracy. The design specifications are simply a maximum range of error for intoxilyzers generally. The actual accuracy of a given intoxilyzer is determined only by calibration checks. These checks are the truest measure of accuracy of a particular intoxilyzer at a particular time. Where this range of accuracy, compared against a particular reading, is such that an actual alcohol concentration level of .10 percent or more is assured, the intoxilyzer reading is relevant, admissible, and sufficient to sustain a conviction when coupled with evidence of operation of a motor vehicle. *See State v. Boyd* (1985), 18 Ohio St.3d 30, 479 N.E.2d 850, syllabus.

22 Ohio St.3d 296, 297, 490 N.E.2d 596(1986). *Accord, State v. Sommer*, 5th Dist. Fairfield No. 04CA36, 2005-Ohio-1707; *State v. Brandt,* 5th Dist. Tuscarawas No. 2002 AP 02 0008, 2002 WL 31883747(Oct. 4, 2002).

**{¶21}** In the case at bar, Overmeyer stipulated that he was operating the vehicle and that his BAC Datamaster test resulted in a reading of .081%. Overmeyer did not file a motion to suppress alleging that the BAC Datamaster had not been properly calibrated. Overmeyer did not proffer the pre and post calibration tests of the BAC Datamaster used in his case.

{¶22} As our brethren in the Fourth District have observed,

> In the case at bar appellant contends that the breath-testing instrument's design specifications, which provide for a margin for error for each breath alcohol test, require the conclusion that his breath alcohol test fell below the statutory limit. We disagree with appellant. In *Schuck, supra*, the Supreme Court determined that in determining the accuracy of a breath testing instrument's results, a court should not rely on the instrument's design specifications. Rather, a court's inquiry must focus on properly submitted calibration checks. In this case, the parties stipulated to the calibration checks. Thus, in the case at bar the breath-testing instrument's design specifications need not be considered and have no bearing on the accuracy of the instrument's results.

*State v. Sams,* 4th Dist. Washington No. 94 CA 48, 1995 WL 649906(Oct. 25, 1995) at *2.

{¶23} As was true in *Sommer*, Overmeyer did not proffer any evidence concerning a pre-test or post-test calibration result; rather Overmeyer, like Sommer, chose to challenge the design specification margin of error. Accordingly, we find no error in the trial court's ruling under the facts of the case at bar.

{¶24} Overmeyer's sole assignment of error is overruled.

{¶25} The judgment of the Licking County Municipal Court is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur