[Cite as *State v. Vales*, 2020-Ohio-245.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                          |
|--------------------------|---|----------------------------------|
| STATE OF OHIO            | : | Hon. William B. Hoffman, P. J.   |
|                          | : | Hon. W. Scott Gwin, J.           |
| Plaintiff-Appellee       | : | Hon. John W. Wise, J.            |
|                          | : |                                  |
| -vs-                     | : |                                  |
|                          | : | Case No. 2019CA00061             |
| CHRISTOPHER VALES        | : |                                  |
|                          | : |                                  |
| Defendant-Appellant      | : | OPINION                          |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2018CR1673



JUDGMENT:                    Affirmed



DATE OF JUDGMENT ENTRY:      January 27, 2020



APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN D. FERRERO                     BERNARD HUNT
Stark County Prosecutor             2395 McGinty Road N.W.
By: RONALD MARK CALDWELL            North Canton, OH 44720
110 Central Plaza South, 5th Floor
Canton, OH  44702

*Gwin, J.,*

{¶1}    Defendant-appellant Christopher Vales ["Vales"] appeals his conviction and sentence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    In 2018, Vales was charged by indictment with one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI"), in violation of R.C. 4511.19(A)(2), and one count of driving under suspension, in violation of R.C. 4510.11(B).  The OVI count was charged as a felony of the third degree because it alleged that Vales had been convicted of OVI five times within the last twenty years.  This number was later amended, upon motion of the prosecution, to four prior OVI convictions.  As a result of the amendment, the current OVI charge was reduced to a felony of the fourth degree (three prior OVI convictions within the last ten year).

{¶3}    The facts presented during Vales' jury trial follow.

{¶4}    During the early morning hours of September 4, 2018, around 3:16 a.m., Canton Police Officer Christina Paumier was patrolling her assigned zone and was responding to a domestic call.  While proceeding on Sherrick Road in the southeast side of Canton, Paumier noticed a white SUV go up onto the curb and nearly strike several telephone poles.  The vehicle would go up and come back down from the curb, and was swerving onto the sidewalk from the roadway.  The vehicle was also driving at a slow rate of speed.  Having decided that she was going to stop the vehicle, Paumier ran the license plate and found out the license plate was expired and that the registered owner of the vehicle had failed to reinstate his driver's license, meaning his license was suspended.

With this information, as well as the erratic driving, Paumier effected a traffic stop of the vehicle.

{¶5} After making the stop, Paumier approached the driver, wearing her body camera, and determined that he was the registered owner of the vehicle. Vales told the officer that he was looking for "1027" the address of his girlfriend's present location. Paumier asked Vales to step out of his vehicle, and noticed that Vales had slurred speech, which made it difficult for Paumier to understand him, as well as glassy and bloodshot eyes. Paumier also smelled alcoholic beverage from his person and in his vehicle. Vales' pupils appeared to be significantly constricted, all of which led Paumier to believe that Vales was impaired. Paumier next asked Vales if he had consumed any alcohol; Vales said that he had consumed two beers at around 8-9 o'clock. Paumier also asked Vales if he had any medical conditions. After hesitating, Vales replied, "My sugar." Paumier concluded that Vales might be diabetic, and so she asked him if he had checked his sugar levels. Vales replied that he had, and that his levels were good. When Vales was later performing the field sobriety tests, Paumier asked if he had any other medical conditions or physical limitations. Paumier wanted to know if there was any medical reason why Vales could not perform the tests. Vales said that he had plates in both his big toes and in his right wrist.

{¶6} Vales was asked if he would perform the field sobriety tests. The first test was the horizontal nystagmus test ["HGN"], which tests if there is equal tracking of the eyes. Paumier noted that Vales did not complain of any form of brain injury. Instead of tracking the tip of Paumier's pen, Vales stared ahead; he also followed the pen by moving his head on several occasions. Vales was not able to follow instructions during the test.

{¶7}     Paumier next asked Vales to perform the walk-and-turn test ["WAT"], which tested his ability to follow instructions and his balance.  Vales could not stand for 26 seconds without losing his balance, and could not walk a straight line.

{¶8}     Finally, Paumier asked Vales to perform the one-legged test ["OLS"], which required him to stand straight up and lift one leg up for 30 seconds.  Paumier noted that Vales kept swaying while he was standing, and could only keep his leg up for a matter of seconds before losing balance.

{¶9}     Based on Vales' performance on these three tests, Paumier concluded that he was under the influence of drugs, alcohol, or a combination of both.  Paumier then arrested Vales and impounded his vehicle since it had expired plates, and since the only occupant was being arrested.  Officer Paumier asked Vales for identifying information; Officer Paumier noted that Vales got his birthday wrong.

{¶10}   As part of police policy, when a vehicle is impounded, an inventory search of that vehicle is performed in order to preserve the contents of the vehicle.  During this inventory search of Vales' impounded vehicle, Paumier found numerous medication and prescription bottles (made out to Vales) for opiates, some of which were empty.  The labels on several of the prescription bottles for the opiates warned that alcohol should not be consumed while taking the drugs.

{¶11}   Paumier transported Vales to the Stark County Jail.  On the way, Paumier asked Vales about the prescription bottles.  Vales stated that he does not take prescribed medication.  Once they reached the jail, Vales was booked as part of standard procedure.  Paumier had decided to ask Vales for a urine test instead of a breath test.  The breath test does not test for drugs, whereas the urine test can provide for testing of alcohol and

drugs. Vales, however, refused once he found out that she was going to test for alcohol and drugs. "No, I won't do it," Vales responded. Vales then stated, "If I refuse, then what…I ain't refusing…" The camera was then turned off.

{¶12} Officer Paumier admitted under cross-examination that her flashlight pointed in the eyes of the Vales could have caused him to have difficulty on the HGN test. Officer Paumier admitted that regulations required the use of a "clue" sheet to mark deviations made by the suspect from the standards; however, she did not use this sheet in Vales' case. Finally, she related that a person with brain damage had the same clues as a person who was intoxicated.

{¶13} Vales testified that he traveled from Cleveland to pick up his girlfriend in Canton, but that he could not find the right street or address. Before long, he noticed that a police cruiser had pulled up right behind him, and soon pulled him over. He originally thought the officer was going to provide him with assistance in finding address, which was on Sherrick Road.

{¶14} Vales testified that he was unable to perform the tests required by the police due to his prior physical and mental injuries. He had extensive brain Injuries from a beating he sustained in 2000, which was inflicted by an individual with a fire extinguisher. This injury affected his speech and his balance. He is currently in therapy for his slurred speech and he uses a walker to get around. He also has trouble hearing and is required to wear a hearing aid. He has gout, rotator cuff issues from a car accident and takes the pain pills, found in his vehicle for these ailments. Vales admitted that he told Officer Paumier he did not take his medication. He further admitted that he never told Deputy

Paumier that he had suffered a traumatic brain injury.  Vales testified that any odor of an alcoholic beverage came from the fact that he had drunk non-alcoholic beer earlier.

{¶15}  On cross-examination, Vales admitted that taking the prescribed drugs was part of his pain management, but that he did not take any that night since he knew he would be driving. Finally, Vales admitted that he at first refused to take a urine test.  (1T. at 241-242).[1]  However, Vales claimed that he subsequently agreed that he would take the test. (1T. at 229-230; 241-242).

{¶16}  The jury found Vales guilty as charged.  The trial court thereafter sentenced Vales to an aggregate prison term of 18 months - 18 months for the OVI conviction, and a concurrent 180-day sentence for the conviction for driving while under suspension.

*Assignments of Error*

{¶17}  Vales raises three Assignments of Error,

{¶18}  "I. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶19}  "II. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶20}  "III. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE APPELLANT REFUSED TO TAKE A CHEMICAL ANALYSIS OF HIS BREATH, THUS VIOLATED O.R.C. 4511.192."

I.

---

[1] For clarity sake, the transcript of Vales' jury trial will be referred to as "__T.__," signifying the Volume and the page number.

{¶21} In his First Assignment of Error, Vales argues that he was denied effective assistance of retained trial counsel. Specifically, Vales contends that his trial counsel: 1). did not file a suppression motion; 2) counsel failed to object to the admission of the field sobriety tests; 3) counsel did not present Vale's medical records at trial; 4) counsel did not object to the admission of photos of Vale's prescribed pills; and, 5) counsel did not subpoena witnesses to testify at trial in Vale's defense.

**STANDARD OF APPELLATE REVIEW.**

{¶22} To obtain a reversal of a conviction based on ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

{¶23} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶24} The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

"Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland,* 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone,* 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180

(1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland,* 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, 562 U.S. 86, 104-105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

### **ISSUE FOR APPEAL.**

*A. Whether there is a reasonable probability a motion to suppress the field sobriety tests would have been granted and whether there is a reasonable probability that the jury would have found Vales not guilty of OVI if the motion to suppress had been granted.*

**{¶25}** Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–0448; *Accord, State v. Ortiz*, 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. State v. Lavelle, 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86. The defendant must further show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

1). Admissibility of field sobriety tests.

**{¶26}** The state contends that had Vales filed a motion to suppress, the state would have presented evidence that Deputy Paumier substantially complied with

standards promulgated by the National Highway Traffic and Safety Institute for the FST's. [State's Brief at 7].

{¶27} R.C. 4511.19(D) (4)(b) governs the admissibility of results of field sobriety tests. That subdivision provides:

> In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

> (i) The officer may testify concerning the results of the field sobriety test so administered.

> (ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution.

> * * *

> (iii) * * * [I]f the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

{¶28} In other words, the results of the field sobriety tests are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered

the test in substantial compliance with NHTSA guidelines[2]. *State v. Codeluppi,* 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶11.

{¶29} In order for the results of the field sobriety tests to be admissible, the state must show by clear and convincing evidence that the officer performing the testing substantially complied with accepted testing standards. *State v. Schmitt*, 101 Ohio St.3d 79, 2004–Ohio–37, 801 N.E.2d 446; R.C. 4511.19(D)(4)(b). Typically, the standards used are those from the NHTSA. Id. at ¶12. Part of the state's burden "includes demonstrating what the NHTSA requirements are, through competent testimony and/or by introducing the applicable portions of the NHTSA manual." *State v. Djisheff*, 11th Dist. Trumbull No.2005–T–0001, 2006–Ohio–6201 *citing State v. Brown*, 166 Ohio App.3d 638, 2006–Ohio–1172, 852 N.E.2d 1228 (11th Dist.); *State v. Ryan*, 5th Dist. Licking No. 02–CA-00095, 2003–Ohio–2803. In *State v. Boczar*, the Supreme Court held that HGN test results are admissible in Ohio without expert testimony, so long as substantial compliance with testing guidelines has been shown and a proper foundation has been established as to the administering officer's training, the officer's ability to administer the test and the officer's technique in administering the test. *State v. Boczar*, 113 Ohio St.3d 148, 153, 2007–Ohio–1251, 863 N.E.2d 155.

{¶30} Even if we assume that the testing was not done in substantial compliance with the applicable standards, reversal would not be warranted in this case. In *Beard v. Meridia Huron Hosp.*, the Ohio Supreme Court set forth the following standard,

> An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is

---

[2] National Highway Traffic and Safety Administration.

inconsistent with substantial justice.   *O'Brien,* 63 Ohio St.2d at 164–165, 17.O.O.3d 98, 407 N.E.2d 490.   "'Generally, in order to find that substantial justice has been done to [a party] so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision.'"  Id., *quoting  Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph three of the syllabus.

*See also, State v. Overmeyer,* 5th Dist. Licking No. 15-CA-15, 2015-Ohio-4479, ¶17.

{¶31}   In *State v. Rahman,* the Ohio Supreme Court recognized this principal,

We are also mindful that our role upon review of this case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury.   In writing about the court's function on federal appellate review, Justice John Paul Stevens' observation is particularly appropriate:

"'[I]t is not the appellate court's function to determine guilt or innocence * * *.  Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out * * *.  [T]he question is, not were [the jury] right in their judgment, regardless of the error or its effect upon the verdict.  It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.  The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the

total setting.'" *United States v. Hasting* (1983), 461 U.S. 499, 516, 103 S.Ct.

1974, 1984, 76 L.Ed.2d 96, Stevens, J. concurring (*quoting Kotteakos v.*

*United States* [1946], 328 U.S. 750, 763–764, 66 S.Ct. 1239, 1247–1248,

90 L.Ed. 1557).

*State v. Rahman*, 23 Ohio St.3d 146, n. 4, 492 N.E.2d 401.   The Ohio Supreme Court

has applied this standard of review,

> Thus, under Section 2945.83 of the Revised Code it would seem that
> since there is substantial evidence to support the guilty verdict even after
> the tainted evidence is cast aside, we should affirm.   However, under *Fahy*
> *v. State of Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963),
> and *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d
> 705 (decided February 20, 1967), we are refused that course of action.   In
> *Fahy,* the court said that when constitutionally inadmissible evidence has
> been admitted, a reversal is required where 'there is a *reasonable possibility*
> that the evidence complained of might have contributed to the conviction.'
> (Emphasis added.) [Sic.]   In *Chapman*, the court made it clear that the *Fahy*
> rule applied to federal constitutional errors in spite of a state harmless-error
> statute to the contrary.

*State v. Cowans*, 10 Ohio St.2d 97,104–105, 227 N.E.2d 201(1967).

{¶32}   In the case at bar, we find beyond a reasonable doubt, that the evidence of

the HGN, WAT and OLS Standardized Field Sobriety Tests did not contribute to his Vales'

conviction.

{¶33} "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. *Columbus v. Mullins* (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. *See, also, State v. McKee* (2001), 91 Ohio St.3d 292, 296, 744 N.E.2d 737." *State v. Schmitt*, 101 Ohio St.3d 79, 83, 2004-Ohio-37 at ¶ 12, 801 N.E.2d 446, 450(2004); *Accord, State v. Hackerdorn,* 5th Dist. Ashland No. 2004-CA-053, 2005-Ohio-1475, ¶ 67. In *State v. Schmitt*, the court indicated there is no reason to treat an officer's testimony concerning a driver's performance on nonscientific field tests any differently from his observations on other indications of intoxication like slurred speech, bloodshot eyes and the odor of alcohol. Id. at ¶ 14. The court went on to conclude that even when the final results of a field sobriety test must be excluded at trial because the test was not administered in compliance with standardized testing procedures, the officer may testify as a lay witness under Evid.R. 701 about the officer's observation of the defendant's performance. Id. at syllabus, ¶ 15. Thus the results, i.e. whether the defendant passed or failed the specific test are not admissible without substantial compliance with NHTSA requirements. In *State v. Ricer*, this court observed,

> The "results" of an HGN test include an officer's opinion about whether a person "passed" or "failed" the test, the number of clues a person demonstrated on an HGN test, and, based upon the number of clues demonstrated during the HGN test, the statistical likelihood the person was under the influence of alcohol and had a BAC level over the legal limit. *Bresson* [51 Ohio St.3d 123] at 126–29 [554 N.E.2d 1330]; *Kennedy* [5th Dist. No. 2008 AP 04 0026, 2009-Ohio-1398, 2009 WL 795209] at ¶ 27. In

contrast, an officer's observation that a defendant was unable to focus steadily on the stimulus during the HGN test or swayed during a field sobriety test is the type of physiological factor about which an officer may testify even if the test was not administered in substantial compliance with the testing standards. *Wickliffe v. Kirara*, 11th Dist. No. 2006-L-172, 2007-Ohio-2304, [2007 WL 1395350], ¶ 19; *State v. Koteff*, 5th Dist. No. 04-COA-035, 2005-Ohio-1719, [2005 WL 845208], ¶ 5, 18. Thus, an officer's observation that the defendant could not hold himself steady, lost his balance, stumbled or staggered when he walked, stepped off the line, could not follow simple directions, or used his arms for balance, is admissible as lay evidence of intoxication even if the final results of the field sobriety tests are inadmissible at trial due to a lack of substantial compliance with accepted testing standards. *Schmitt* [101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446] at syllabus; *State v. Johnson*, 7th Dist. No. 05 CO 67, 2007-Ohio-602 [2007 WL 446024], ¶ 25; *State v. Green*, 8th Dist. No. 88234, 2007-Ohio-1713 [2007 WL 1084128], ¶ 53; *Cleveland v. Hunter*, 8th Dist. No. 91110, 2009-Ohio-1239 [2009 WL 712498], ¶ 62–63; *State v. Lothes*, 11th Dist. No. 2006-P-0086, 2007-Ohio-4226 [2007 WL 2350997], ¶ 59; *State v. Hammons*, 12th Dist. No. CA2004-01-008, 2005-Ohio-1409 [2005 WL 694582], ¶ 5.

5th Dist. Ashland No. 17-COA-023, 2018-Ohio-426, 106 N.E.3d 819, ¶20.

{¶34} Vales did not challenge the basis for the traffic stop in the court below. However, we note that prior to initiating the stop, Deputy Paumier was informed that

Vales' driver license was under a suspension for failure to re-instate, and further, that the plates on Vales' vehicle were expired.  Next, Vales' arrest was proper because he was driving under a suspended license.

{¶35}  Probable cause to arrest for OVI need not arise solely from a suspect's field sobriety tests.  *Homan,* 89 Ohio St.3d at 427, 732 N.E.2d 952.  Probable cause to arrest exists when, at the moment of the arrest, "the facts and circumstances within [the arresting police officer's] knowledge * * * were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."  *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964); *see, also, State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16(1974).  The existence of probable cause is determined by examination of the "'totality' of facts and circumstances within an officer's knowledge."  *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703(1997).  "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of strict compliance."  *Homan*, 89 Ohio St.3d at 427, 732 N.E.2d 952.

{¶36}  In the case at bar, Deputy Paumier could testify that Vales had slurred speech, glassy and bloodshot eyes, smelled of an alcoholic beverage and that Vales admitted to having consumed two beers earlier. Deputy Paumier could testify that Vales could not follow the tip of a pen with his eyes when asked, and that Vales stepped off the line that she had asked him to walk.  Deputy Paumier could testify that she observed Vales swaying while awaiting the OLS test, and further that he lost his balance during the test.

**{¶37}** Based on the Deputy's testimony we find that the totality of facts and circumstances supported a finding of probable cause to arrest Vales for driving under the influence of alcohol. We further find that probable cause was established even in the absence or exclusion of the field sobriety test.

**{¶38}** As there is not a reasonable probability that the jury would have found Vales not guilty of OVI if the motion to suppress had been granted, trial counsel was not ineffective in failing to file a motion to suppress[3].

**{¶39}** Vales next contends that his attorney failed to introduce medical records that were in his possession. Vales argues, "Trial counsel ultimately determined to go to trial without these important documents." [Appellant Brief at 6].

*B. Whether the failure of trial counsel to offer medical records to substantiate Vales' medical condition was ineffective assistance of counsel.*

**{¶40}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶183(11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), *citing People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004- Ohio-1008 at ¶ 21.

---

[3] The sufficiency of the evidence to support Vales' conviction will be addressed more fully in response to Vales' Second Assignment of Error.

{¶41} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995–Ohio–171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980)(*quoting United States v. Denno,* 313 F.2d 364 (2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143).

{¶42} Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523(1988). This court must accord deference to defense counsel's strategic choices made during trial. "A fair assessment of attorney performance requires us to eliminate the distorting effect of hindsight." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987). *See State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶43} Accordingly, we will not second-guess the judgment of Vales' counsel. Vales himself provided testimony of his injuries and medical disabilities. Vales fails to elucidate with any particularity why the records were necessary or how the result of the trial was unreliable or unfair because the records were not admitted into evidence.

{¶44} We find that trial counsel's failure to submit the medical records did not prejudice Vales resulting in an unreliable or fundamentally unfair outcome of the proceeding. There is no "reasonable probability" that the trier of fact would not have found him not guilty had counsel submitted the medical records.

*C. Whether trial counsel was ineffective in failing to object to the photographs of prescription bottles found in Vales' car.*

{¶45} Vales does not specify or elucidate his claim that the photographs of prescription bottles found inside his car during an inventory search of his vehicle would have been inadmissible at trial. Rather his argument is based upon an unsupported generalization.

{¶46} In *State v. Crotts*, the Ohio Supreme Court explained,

As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (eighth Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable.

"'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than

intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172,

743 N.E.2d 890, *quoting* Weissenberger's Ohio Evidence (2000) 85–87,

Section 403.3.

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23-24. *Accord, State v. Morgan,* 5th Dist. Richland No. 18CA121, 2019-Ohio-2785, ¶36.

{¶47} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988). *Accord, State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

{¶48} In the case at bar, Vales admitted that he was legally prescribed Percocet, Atorvastatin, and Thiadiazine. 1T. at 228. He further testified that he participated in pain management. Id. at 227. Vales testified that he suffered a traumatic brain injury as the result of a severe beating. That combined with his "sugar" necessitated him taking the prescribed medications. Deputy Paumier testified that it was because she found the prescription pill bottles and because Vales had informed her that he took medications, she requested a urine test as opposed to a breath test. The bottles themselves were not admitted into evidence.

{¶49} Accordingly, Vales has failed in his burden to demonstrate that the photographs were improperly admitted into evidence during Vales' jury trial. Therefore, counsel was not ineffective in failing to object to the photographs.

*D. Whether trial counsel was ineffective for failing to call certain witnesses to testify at trial.*

{¶50} Vales argues that counsel did not call certain witnesses who would have testified to Vales' medical problems. In the case at bar, counsel indicated that Vales might wish to present the testimony of his sister and his daughter. 1T. at 10.

{¶51} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749(2001). Moreover, "'[a]ttorneys need not pursue every conceivable avenue; they are entitled to be selective.' " *State v. Murphy*, 91 Ohio St.3d 516, 542, 747 N.E.2d 765(2001)*, quoting United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993).

{¶52} In the case at bar, Vales testified in his own defense. He provided the jury with an explanation of his physical disabilities, his medical problems, and of the prescriptions that he take for those conditions. Evidence was presented that Vales did not tell Deputy Paumier about his brain injury. The video evidence from Vales' body camera shows Vales tell Deputy Paumier about the plates in his toes and wrists. He further told the deputy that he could perform the FST's.

{¶53} In his appeal, Vales fails to elucidate with any specificity what additional facts the uncalled witnesses would have provided. Vales' claim with respect to both performance and prejudice rests on mere speculation. "Such speculation is insufficient to establish ineffective assistance." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 217, *citing State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 219, and *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 121.

{¶54} As the testimony of the witnesses would have been cumulative to Vales' own testimony, we conclude that counsel made a legitimate "tactical decision" not to call these witnesses. Therefore, the decision of counsel not to call these witnesses was not ineffective assistance.

{¶55} Based upon the foregoing, Vales' First Assignment of Error is overruled.

II.

{¶56} In his Second Assignment of Error, Vales argues that there was insufficient evidence to convict him, and further Vales contends that the jury's findings are against the manifest weight of the evidence[4].

**STANDARD OF APPELLATE REVIEW.**

*Sufficiency of the Evidence.*

{¶57} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

---

[4] Vales does not challenge his conviction for Driving under Suspension.

{¶58} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**ISSUE FOR APPEAL**

*A.   Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Vales' guilt on each element of the crime of OVI beyond a reasonable doubt.*

{¶59} Vales was convicted of one count of OVI. R.C. 4511.19(A)(2) provides,

(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or

pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶60} Per se offenses make the blood-alcohol content an element of the offense. The trier of fact must find only "that the defendant operated a vehicle * * * and that the defendant's chemical test reading was at the proscribed level." *Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988). In contrast, for "driving under the influence" in violation of R.C. 4511.19(A),

The amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed.1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a

vehicle is at issue in the prosecution of a defendant under such section. It

is the behavior of the defendant which is the crucial issue...

*Lucas*, 40 Ohio St.3d at 104, 532 N.E.2d 130.

{¶61} The phrase "under the influence of intoxicating liquor" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *Toledo v. Starks*, 25 Ohio App. 2d 162, 166, 267 N.E.2d 824 (6th Dist. 1971). *See, also, State v. Steele*, 95 Ohio App. 107, 111, 117 N.E.2d 617 (3rd Dist. 1952) ("[B]eing 'under the influence of alcohol or intoxicating liquor' means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess"). *See, State v. Henderson*, 5th Dist. Stark No. 2004-CA-00215, 2005-Ohio-1644, ¶ 32; *State v. Ahmed*, 5th Dist. Stark No. 2007-CA-00049, 2008-Ohio-389, ¶26.

{¶62} The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking.

*Oregon v. Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742 (1972);  *Fairfield v. Regner,* 23 Ohio App.3d 79, 84, 491 N.E.2d 333 (12th Dist. 1985); *State v. Bernard*, 20 Ohio App.3d 275, 276, 485 N.E.2d 783 (9th Dist. 1985); *Westlake v. Vilfroy*, 11 Ohio App.3d 26, 27, 462 N.E.2d 1241 (8th Dist. 1983); *State v. Judy*, 5th Dist. No. 2007-CAC-120069, 2008-Ohio-4520, 2008 WL 4118256, ¶27*.  State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, (2004), ¶15.

{¶63} "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated.  *Columbus v. Mullins* (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. *See, also, State v. McKee* (2001), 91 Ohio St.3d 292, 296, 744 N.E.2d 737."  *State v. Schmitt*, 101 Ohio St.3d 79, 83, 2004-Ohio-37, 801 N.E.2d 446, 450, at ¶ 12 (2004); *Accord, State v. Hackerdorn*, 5th Dist. Ashland No. 2004-CA-053, 2005-Ohio-1475, ¶ 67.

{¶64}  In the case at bar, Deputy Paumier encounter a vehicle that several times drove over the curb, nearly striking several poles along the roadway. Deputy Paumier testified that Vales had slurred speech, glassy and bloodshot eyes, smelled of an alcoholic beverage and that Vales admitted to having consumed two beers earlier. Deputy Vales could testify that Vales could not follow the tip of a pen with his eyes when asked, and that Vales stepped off the line that she had asked him to walk.   Deputy Paumier could testify that she observed Vales swaying while awaiting the OLS test, and further that he lost his balance during the test.  Deputy Paumier further testified that Vales refused a urine test when requested.

{¶65}  Viewing the evidence in the case at bar in a light most favorable to the prosecution,  we  conclude  that  a  reasonable  person  could  have  found  beyond  a

reasonable doubt that Smith had committed the crime of OVI in violation of R.C. 4511.19(A)(2). We hold, therefore, that the state met its burden of production regarding each element of the crime of OVI and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Vales' conviction.

*Manifest weight of the evidence.*

{¶66} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶67} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶68} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

ISSUE FOR APPEAL.

*B.  Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

**{¶69}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996).  Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true.  *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).  Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.  *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶70}** In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw the events as they transpired in real-time because the events were recorded on Deputy Paumier's body camera and admitted into evidence during the trial.  Further, the jury was able to observe both Deputy Paumier and Vales subject to cross-

examination. In addition, the jury heard Vales' and his attorney's arguments and explanations about his actions. Thus, a rational basis exists in the record for the jury's decision.

{¶71} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Vales' conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Vales' guilt. The jury neither lost his way nor created a miscarriage of justice in convicting Vales of OVI.

{¶72} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Vales was convicted.

{¶73} Vales' Second Assignment of Error is overruled.

III.

{¶74} In his Third Assignment of Error, Vales challenges the trial court's ruling that he had refused to take a chemical analysis of his breath, and thereby violated R.C. 4511.191. Vales concedes that evidence of his refusal to take a urine test may be used against him at trial, but that it shouldn't have in this case because Vales attempted to revoke this refusal and submit to the test after his arrest.

**STANDARD OF APPELLATE REVIEW.**

{¶75}   With respect to the admissibility of evidence at trial of a defendant's refusal to take a chemical test, the United States Supreme Court has held that such evidence does not violate the defendant's Fifth Amendment right against self-incrimination nor the Fourteenth Amendment right to due process.  *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748(1983).  Similarly, the Ohio Supreme Court has concluded that under certain circumstances, evidence of a refusal to submit to a chemical test can be used against a defendant at trial.  *See Columbus v. Mullins*, 162 Ohio St. 419, 55 O.O. 240, 123 N.E.2d 422(1954); and *Westerville v. Cunningham*, 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40(1968).

{¶76}   The reason a person refused to take the breath test is a disputed issue of fact to be resolved by the jury under proper instructions from the trial judge.  *City of Maumee v. Anistik*, 69 Ohio St.3d 339, 344, 1994-Ohio-157, 632 N.E.2d 497.  This Court has applied the Ohio Supreme Court's determination that evidence regarding a refusal to submit to a breath or blood test is admissible at trial.  *See State v. Frangella,* 5th Dist. Richland No. 11CA43, 2012-Ohio-1863, ¶44.

ISSUE FOR APPEAL.

*Whether the trial court provided the jury a legally correct refusal instruction.*

{¶77}   In  *Maumee v. Anistik*, 69 Ohio St.3d 339, 632 N.E.2d 497 (1994), syllabus, the Ohio Supreme Court held that a trial court may issue a refusal instruction to the jury if a person arrested for an OVI refuses to submit to chemical testing "and the reason given for the refusal is conditional, unequivocal, or a combination thereof * * *."  The Court then approved specific language for such an instruction,

"Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his [or her] breath to determine the amount of alcohol in his [or her] system, for the purpose of suggesting that the defendant believed he [or she] was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol."

*Maumee v. Anistik*, 69 Ohio St.3d 339, 632 N.E.2d 497, syllabus.

{¶78} In the case at bar, the trial court provided the jury with a legally correct refusal instruction[5], and the instruction allowed the jury, as the ultimate finder of fact, to determine whether or not defendant refused to submit to a chemical test of his breath. Because the court's instruction was a correct statement of the law, the trial court did not abuse its discretion in instructing the jury. Furthermore, the instruction did not amount to prejudicial error.

{¶79} The jury heard Vales' explanation concerning Deputy Paumier's request that he submit to a urine test. The jury heard Vales' explanation concerning whether or not he had refused to submit to a urine test. The jury viewed the body camera video footage showing in real time as the events transpired Vales' responses to Deputy Paumier's request that he submit to a urine test.

{¶80} Based on the foregoing, Vales' Third Assignment of Error is overruled.

---

[5] 1T. at 254.

{¶81}  The judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, J.,

Hoffman, P.J., and

Wise, John, J., concur