OPINION
{¶ 1} Appellant Regan Bound appeals his conviction, in the Guernsey County Court of Common Pleas, for one count of passing bad checks and one count of theft by deception. The following facts give rise to this appeal.
 {¶ 2} On January 31, 2002, Kroger's Grocery Store filed a complaint, with the Cambridge Police Department, alleging they had received a bad check, in the amount of $450, from an establishment operating under the name of "KoKo's Coffee House and Copy Center." Appellant owned KoKo's, which was a coffeehouse located in Cambridge. Following this initial complaint, Detective Harbin received another ten complaints for bad checks.
 {¶ 3} On February 14, 2002, a complaint was filed, in the Cambridge Municipal Court, pertaining to the eleven checks. Appellant waived a preliminary hearing and the municipal court bound this matter over to the Guernsey County Court of Common Pleas. Prior to the presentation of the charges to the grand jury, appellant's counsel and the state attempted to resolve this matter. The state gave appellant until March 22, 2002, to satisfy the eleven bad checks. Failure to do so would result in the case being presented to the grand jury.
 {¶ 4} Appellant satisfied seven of the eleven checks. Appellant did not pay the remaining four checks by March 22, 2002. The remaining four checks involved two checks to Mr. Chris Cobb and two checks to Big Train Coffee Company. The state proceeded to present this matter to the grand jury. In addition to Mr. Chris Cobb's and Big Train Coffee Company's complaints, the state also presented evidence regarding complaints filed by Business Equipment Company and Eric Schlosser.
 {¶ 5} The Guernsey County Grand Jury returned a three-count indictment. The indictment contained one count of passing bad checks and two counts of theft by deception. The case proceeded to a bench trial on December 26, 2002. At the close of appellant's case-in-chief, defense counsel made a motion for judgment of acquittal as to one count of theft by deception. The trial court granted defense counsel's motion and dismissed the count.
 {¶ 6} At the conclusion of the trial, the trial court found appellant guilty of counts one and three of the indictment. On January 31, 2003, the trial court sentenced appellant to a six-month term, on each count, to be served consecutively. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration.
 {¶ 7} "I. The state failed to prove venue as to count one of the indictment relating to big train coffee, a California Company.
 {¶ 8} "II. The trial court erred in allowing in evidence in violation of evidence Rule 801.
 {¶ 9} "III. The judgment of the trial court finding defendant-appellant guilty of passing bad checks to chris cobb in violation of Ohio revised code Section 2913.11 is against the manifest weight of the evidence.
 {¶ 10} "IV. The judgment of the trial court finding defendant-appellant guilty of passing bad checks to big train coffee in violation of Ohio revised code section 2913.11 is against the manifest weight of the evidence.
 {¶ 11} "V. The judgment of the trial court finding defendant-appellant guilty of theft by deception in violation of ohio revised code section 2913.02 is against the manifest weight of the evidence."
 I {¶ 12} In his First Assignment of Error, appellant maintains the state failed to prove venue as to the offense of passing bad checks. We disagree.
 {¶ 13} Appellant contends that in order to establish venue, the state was required to prove, beyond a reasonable doubt, that the issuance of the check, to Big Train Coffee, occurred in Guernsey County. Specifically, appellant maintains the state failed to call any witness, from Big Train Coffee Company, to testify about what property was taken from the company and where it was delivered. The record indicates appellant did not raise the issue of venue at trial. Generally, if issues of venue are not raised before the trial commences, they will be considered waived on appeal. State v. Williams (1988), 53 Ohio App.3d 1,5.
 {¶ 14} However, under Crim.R. 52(B), plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Notice of plain error, under this rule, is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. Cooperrider (1983),4 Ohio St.3d 226, 227. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell, 75 Ohio St.3d 163, 166,1996-Ohio-100.
 {¶ 15} In the case sub judice, we conclude the state established venue for the charge of passing bad checks. Passing bad checks is defined in R.C. 2913.11 as follows:
 {¶ 16} "(A) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored.
 {¶ 17} "(B) For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:
 {¶ 18} "(1) The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;
 {¶ 19} "(2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor.
 "* * *" {¶ 20} Pursuant to Section 10, Article I, of the Ohio Constitution, citizens are guaranteed "a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." The General Assembly embodied this constitutional principle in R.C. 2901.12(A). This statute provides:
 {¶ 21} "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." The statutory "any element of the offense" rule was approved by the Ohio Supreme Court in State v. Draggo
(1981), 65 Ohio St.2d 88, 91-92.
 {¶ 22} In the case sub judice, there is sufficient evidence, in the record, to establish venue beyond a reasonable doubt. Linda Schott, branch manager of the east branch of US Bank, formerly Firstar Bank, located in Guernsey County, testified about the returned checks. According to Ms. Schott's records, appellant opened a business account on October 18, 2001. Tr. Vol. I at 87. Appellant was the only authorized signer on the account. Id. Ms. Schott testified that check numbers 1092 and 1093, made payable to Big Train Coffee Company, drawn on appellant's business account at US Bank, were returned for non-sufficient funds. Id. at 93-96.
 {¶ 23} Since the checks were issued from a bank located in Guernsey County, the state established venue because at least one element of the crime of passing bad checks occurred in Guernsey County. Therefore, no error occurred at trial concerning the issue of venue. This matter was properly heard in Guernsey County.
 {¶ 24} Accordingly, appellant's First Assignment of Error is overruled.
 II {¶ 25} Appellant maintains, in his Second Assignment of Error, the trial court violated Evid.R. 801 when it permitted Detective Harbin to testify that appellant had not discharged by payment or satisfied the debt owed to Big Train Coffee Company as of the morning of trial. We disagree.
 {¶ 26} Evid.R. 801(C) defines hearsay as "* * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." At trial, Detective Harbin testified as follows:
 {¶ 27} "Q. Did you confirm whether or not Big Train Coffee had — that check had been paid in full or whether any payments had been made on those two checks?
 {¶ 28} "A. Yes. I contacted Big Train and they, as of again this morning, have not been paid.
 {¶ 29} "Q. And —
 {¶ 30} "MR. WARHOLA: I guess I'll ask that be stricken from the record, your Honor, I mean, that's just hearsay.
 {¶ 31} "THE COURT: Response.
 {¶ 32} "MR. PLUMMER: Well, your Honor, it is hearsay, but I believe that Detective Harbin can testify generally it would be in the ordinary course of his duty to confirm these types of issues as part of his investigation.
 {¶ 33} "THE COURT: The objection will be sustained in part, and he may not testify as to what others have told him and he may testify what he's discovered in his own investigation; it comes from the same source. Objection is sustained as to what others might have told him what he testified from. It will remain in the record, his investigation showed Big Train not paid. Continue." Tr. Vol. I at 174-175.
 {¶ 34} The trial court did not permit Detective Harbin to testify about what someone from Big Train Coffee Company told him. However, the trial court did permit Detective Harbin to testify about what his investigation revealed. "* * * Police officers' testimonies as to what course of conduct they undertook as a result of conversations engaged in during the course of a criminal investigation is not considered hearsay." [Citations omitted.] State v. Anderson, Cuyahoga App. No. 83800,2004-Ohio-4071, at ¶ 9. The information Detective Harbin discovered as a result of his conversation with a representative from Big Train Coffee Company was merely part of his criminal investigation and therefore, not hearsay. The trial court properly admitted Detective Harbin's testimony concerning what he learned during his investigation.
 {¶ 35} Appellant's Second Assignment of Error is overruled.
 III, IV {¶ 36} In his Third and Fourth Assignments of Error, appellant contends his conviction for passing bad checks is against the manifest weight of the evidence. We disagree.
 {¶ 37} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 38} Appellant maintains the judgment of the trial court finding him guilty of passing bad checks to Chris Cobb and Big Train Coffee Company is against the manifest weight of the evidence. In support of this argument, appellant attempts to distinguish the case sub judice from two prior decisions from this court.
 {¶ 39} In State v. Lyons (Oct. 13, 1993), Holmes App. No. CA-476, we determined the state established a prima facie case of intent to defraud when the account contained no funds and defendant knew the account was closed. In State v. Smith (Apr. 21, 2003), Stark App. No. 2002CA00306, we held there was sufficient, competent credible evidence presented concerning each element of the crime of passing bad checks when the defendant knew the account did not have sufficient funds; the account had a negative opening balance; and the defendant made no deposits into the account.
 {¶ 40} Appellant argues that unlike in Lyons and Smith,
there was no evidence presented at trial that he intended to defraud Chris Cobb, that the account contained insufficient funds to cover the checks to Chris Cobb or that the account was closed. Appellant also claims the state failed to prove that he received notice that the checks had been dishonored or that he had not made payment or satisfaction. We have reviewed the record in this matter and conclude appellant, with purpose to defraud, issued two checks to Chris Cobb and two checks to Big Train Coffee Company, knowing they would be dishonored.
 {¶ 41} Detective Harbin testified that appellant admitted to writing the checks to Chris Cobb and Big Train Coffee Company. Tr. Vol. I at 173. Further, Detective Harbin stated that the checks to Chris Cobb and Big Train Coffee Company remain unpaid. Id. at 175. Further, appellant testified that he received verbal notice from Chris Cobb and written notice from Big Train Coffee Company that the checks had been dishonored. Id. at 291-292; 306-307. Finally, the checks remain unpaid and therefore, were not discharged by payment or satisfaction within ten days.
 {¶ 42} Accordingly, the trial court's judgment finding appellant guilty of passing bad checks is not against the manifest weight of the evidence.
 {¶ 43} Appellant's Third and Fourth Assignments of Error are overruled.
 V {¶ 44} In his Fifth Assignment of Error, appellant contends the trial court's judgment finding him guilty of theft by deception is against the manifest weight of the evidence. We disagree.
 {¶ 45} R.C. 2913.02 defines theft by deception and provides:
 {¶ 46} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 "* * * {¶ 47} "(3) By deception;
 "* * *" {¶ 48} R.C. 2913.01(A) defines "deception" as:
 {¶ 49} "* * * knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omissions that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 50} Appellant claims the trial court's judgment is against the manifest weight of the evidence because there was no evidence that he gave false information on his credit application or that he provided any misleading information or withheld any pertinent information on his credit application. According to Mitchell Kelly Masters, the store manager at Business Equipment, appellant did not provide false information on his credit application. Tr. Vol. I at 156.
 {¶ 51} However, Ms. Masters testified that appellant deceived Business Equipment when he failed to pay for over $4,000 worth of supplies he charged between September 18, 2001 and December 6, 2001. Tr. Vol. I at 145, 162, 163. Although appellant did not provide false information on his credit application, appellant requested credit at the same time he was passing bad checks. This evidence would be sufficient for the trier of fact to establish that appellant falsely implied that he would pay for the goods charged. Accordingly, the trial court's judgment finding appellant guilty of theft by deception is not against the manifest weight of the evidence.
 {¶ 52} Appellant's Fifth Assignment of Error is overruled.
 {¶ 53} For the foregoing reasons, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed.
Wise, P.J. Boggins, J., concurs. Edwards, J., concurs separately.