[Cite as *State v. Newman*, 2021-Ohio-2124.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 20-CA-44 |
| | : | |
| ARTHUR NEWMAN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield County Court of Common Pleas, Case No. 2018CR532

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     June 24, 2021

APPEARANCES:

For Plaintiff-Appellee:

R. KYLE WITT
FAIRFIELD CO. PROSECUTOR
DARCY T. COOK
239 West Main St., Suite 101
Lancaster, OH 43130

For Defendant-Appellant:

JAMES A. ANZELMO
446 Holland Drive
Gahanna, OH 43230

*Delaney, J.*

{¶1} Appellant Arthur Newman appeals from the February 25, 2020 Judgment Entry of Sentence of the Fairfield County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following evidence is adduced from the record of appellant's jury trial.

{¶3} Appellant owned and operated a licensed truck repair shop in Fairfield County known as "Newman's Auto & Performance, LLC" and/or "Newman Auto Transport, LLC." Appellee asserted that appellant took in trucks for repair, switched out parts to different customers' trucks, and sold trucks he had no authority to sell.

{¶4} An investigator from the Ohio Bureau of Motor Vehicles (BMV) testified that appellant has never been a licensed car dealer or a licensed vehicle salesperson, but under Ohio law, he must be licensed if he sells more than 5 vehicles in 12 months, or sells vehicles he does not personally own. Appellant claimed to sell "hundreds" of vehicles per month, but admitted he knew he needed a dealer's license and that he was not a licensed vehicle salesperson.

{¶5} The ownership history of vehicles in Ohio is tracked through title registration and run by the vehicle identification number (VIN). A new title is required every time a new owner acquires a vehicle, even if the new owner is a dealer. If a vehicle is sold and the title is not transferred within 30 days, penalties accrue; a lag in the transfer of title is a red flag for fraud.

{¶6} Title registration is also key to obtaining permanent license plates for a vehicle. A person must register title to obtain permanent plates, but the BMV will issue

temporary tags to a third party with a notarized Bill of Sale and Power of Attorney. The BMV stamps Bills of Sale when temporary tags are issued. In the instant case, multiple Bills of Sale seized from appellant's residence bore the BMV stamp, indicating they had been presented to the BMV.

{¶7} One of appellant's former employees testified about his business practices. Although spouses are not allowed to notarize documents that benefit each other, appellant's wife regularly notarized documents for appellant and appellee admitted into evidence multiple documents notarized under appellant's wife's maiden name. Appellant acknowledged his wife handled all of the paperwork for his various business entities. Appellee alleged the wife's employment at a car dealership gave appellant the necessary knowledge to fraudulently process title paperwork.

{¶8} Appellant's business practices began to catch up with him in 2018 when he was increasingly unable or unwilling to produce trucks he allegedly sold and repaired. Appellant wrote bad checks and offered excuses in ensuing investigations without covering the checks. Appellant owed customers money and they couldn't get their trucks back. Appellant became embroiled in a civil suit; his assets were seized, his shop was closed, and his assets were auctioned off. The inability to access his shop, including the trucks and parts inside of it, was key to appellant's excuses to dissatisfied buyers and repair customers.

{¶9} At trial, a litany of appellant's dissatisfied customers testified against him.

{¶10} On May 15, 2015, Jacob Hillyer gave appellant $28,000 to purchase a 2015 Ford F450. Hillyer received a temporary tag with the vehicle which expired in 45 days, but by the time of expiration appellant had not delivered the title to the vehicle. Appellant

told Hillyer he had to pick up the truck for an "out-of-state inspection;" appellant then told Hillyer there was a problem with the truck and offered to fix it. Appellant never returned the truck; the truck was later recovered in Pickaway County by law enforcement; and Hillyer had to pay an insurance company $6500 for the truck title. Appellant ultimately failed to provide the truck title to Hillyer and, based upon the BMV records of ownership, he lied repeatedly to Hillyer about the status of the truck title.

{¶11} Steve Gorby believed appellant's shop was a truck repair shop that also sold trucks. On May 23, 2018, Gorby paid appellant a deposit of $5000 for a 2014 Ford F350. On May 25, 2018, Gorby completed paperwork and appellant gave him a 30-day temporary tag, but did not turn over the title. Gorby gave appellant $20,000 and took the truck home. Gorby dropped off the truck to appellant on July 22, 2018; appellant did not return Gorby's $25,000, nor did he provide Gorby with the vehicle title.

{¶12} On August 31, 2018, Newman Auto & Performance ordered $539.17 worth of parts from Bob-Boyd Ford and paid by check. Bob-Boyd Ford deposited the check on August 2, 2018, and it bounced. Despite appellant's promises to cover the check, he failed to do so and was served with notice of dishonor on September 13, 2018. Appellant did not return the parts and did not pay the outstanding $539.17.

{¶13} In February 2016, Keith Laughlin took a 2008 Ford F350 to appellant to rebuild the engine for $12,500, which Laughlin paid in cash installments. Laughlin picked up the truck on May 19, 2016; on June 1, 2016, the truck broke down. Appellant told him the parts were covered by warranty but not the labor. Laughlin brought the truck in to appellant for repair, which cost an additional $3100. On July 17, Laughlin learned appellant tried to buy the truck "out from under him" from the bank. Eventually the truck

was returned to Laughlin--missing its engine, keys, and other significant parts. Appellant did not return any of Laughlin's money.

{¶14} On June 20, 2016, appellant sold a Ford F350 to Weston McAfee for $21,000. In July 2016, the truck "blew up" and McAfee had it towed to appellant's shop. Appellant quoted $6500 for parts and told McAfee the truck would take two to three weeks to repair. McAfee paid appellant in July 2016 but the truck was not returned until a court ordered appellant to return it on December 18, 2018. The repairs had not been completed; the engine was missing, the cab wasn't bolted down, and the dash was removed. Appellant did not return any of McAfee's money.

{¶15} In late June 2018, Matthew Ratliff took a 2006 Chevy truck to appellant for repairs, which appellant said would take approximately one week and cost $5000. Ratliff paid $2500 up front and was supposed to pay $2500 upon completion. In August 2018, appellant told Ratliff to take the truck to a residence because appellant's shop had been seized. Ratliff never saw the truck again. Law enforcement eventually recovered the truck at appellant's residence. Appellant had the truck since June 2018.

{¶16} Appellant and his wife knew the truck was hidden in their barn. Appellant took $4500 from Ratliff for repairs which were never completed. Appellant testified Ratliff could have picked up the truck any time he wanted to; Ratliff testified he drove by the property repeatedly looking for the truck and asked appellant to return the truck, to no avail.

{¶17} Appellant and Nathan Otto of KN Excavation LLC agreed appellant would sell KN's truck for at least $15,000. Anything appellant made on the sale over $15,000 was his to keep. Appellant sold the truck on April 27, 2018. Appellant didn't tell Otto the

truck was sold until June 2018. Appellant attempted to reimburse KN with the $15,000 from the sale of the truck with a postdated check. Appellee introduced appellant's bank records to establish that he knew the account did not have sufficient funds to cover the check. The check bounced.

{¶18} KN Excavating reported the bad check to the Fairfield County Sheriff's Department and the matter was investigated by Detective Nicolia. Appellant offered a number of excuses over several conversations but did not pay the $15,000.

{¶19} Bretton Lambert purchased the KN Excavation truck from appellant in April. Appellant did not give Lambert the title until late June.

{¶20} Jeffrey Schwender took a 2005 Dodge Ram to appellant for repairs in August 2018. Schwender paid appellant $5000 cash, including $4000 for parts. Appellant said the repairs would be completed in a few weeks, but Schwender never saw the truck again. It was eventually recovered by law enforcement.

{¶21} An employee of Auto Palace testified they lost a dealer plate at some point and reported the missing plate to the BMV. The plate eventually showed up on appellant's wife's Tahoe, and appellee presented evidence of a jail phone call between appellant and his wife in which he instructed her to put the dealer plate on her own vehicle.

{¶22} Appellant testified on his own behalf at trial and argued he had no criminal intent; he was merely a poor record-keeper and businessman. He acknowledged, however, that he sold vehicles without a license, used dealer tags he was not authorized to use, and possessed multiple Bills of Sale for the same vehicles.

{¶23} Appellant testified that he worked with someone named Max Curry, an auto dealer with access to auto auctions. Appellant claimed he would pay Curry an agreed-

upon amount for vehicles purchased at auction; Curry's dealership would obtain title to the vehicles; and title would then transfer to the buyers of the vehicles. Appellant claimed he didn't know a license was required to sell vehicles; he believed he was authorized to do so via Curry. Appellant also testified, however, that 75 percent of his time was spent on auto repair and 25 percent of his time was spent on auto sales. The volume of appellant's auto sales, by his admission, was fifty to sixty vehicles per week which he bought at auction and then sold.

{¶24} Appellant acknowledged a bad check was written to Bob Boyd on Newman's Auto & Performance LLC account, but it was signed by his wife. He acknowledged the amount was owed, but disclaimed responsibility for it.

{¶25} Appellant also conceded the check to KN Excavation for $15,000 bounced, but it was KN Excavation's fault because he postdated the check and told them to hold onto it. He thought the check would eventually be covered by deposits he made, but those deposits were reversed. Rather than make the check good, or pay the $15,000 in some other fashion, appellant texted KN Excavation repeatedly with excuses.

{¶26} Regarding the title charges, appellant testified titles were not transferred in a timely manner and sometimes were not transferred at all, but that was due to his agreement with River's Edge which, he believed, gave him authority to sell vehicles.

{¶27} Regarding the theft charges, appellant conceded there were "timeliness" issues and his customers were dissatisfied. However, he claimed to have no criminal intent and therefore the missing vehicles, parts, and cash were chalked up to "breach of contract" because a civil judgment against him closed his business and prevented him from completing those jobs.

*Indictment, trial, and verdicts*

{¶28} Appellant was charged by superseding indictment as follows, with counts grouped by victim and transaction:

| COUNT | OFFENSE | VICTIM | DATES/CONDUCT | VERDICT | SENTENCE |
|---|---|---|---|---|---|
| 1 | Engaging in a pattern of corrupt activity, R.C. 2923.32(A)(1) | N/A | | Not guilty | |
| 2 | *Grand theft of a motor vehicle, R.C. 2913.02(B)(5)* | *Jacob Hillyer* | *May 15, 2018 to August 24, 2018, obtained/exerted control over 2011 Ford F450* | *Not guilty* | |
| 3 | *Improper use of certificate of title, R.C. 4505.19(A)(2) and (B)* | | *May 15, 2018 to February 14, 2019: failed to deliver certificate of title* | *Guilty* | *2 years* |
| 4 | Grand theft of a motor vehicle, R.C. 2913.02(A)(2) | Steve Gorby | May 25, 2018 to November 19, 2019, obtained/exerted control over 2014 F350 | Not guilty | |
| 5 | Improper use of certificate of title, R.C. 4505.19(A)(2) and (B) | | May 25, 2018 to August 25, 2018: failed to deliver certificate of title | Guilty | 2 years |
| 6 | *Passing bad checks, R.C. 2913.11(B) and (F)* | *Bob Boyd* | *July October 1, 2018, issued bad "starter check" in amount of $539.17* | *Guilty* | *Merges with Count 7* |
| 7 | *Petty theft, R.C. 2913.02(A)(1)* | *Bob Boyd* | *July 31, 2018 to November 19, 2019:* | *Guilty of 1st degree misdemeanor* | *120 days in jail* |

| | | | obtained/exerted control over $539 | | |
|---|---|---|---|---|---|
| 8 | Grand theft of a motor vehicle, R.C. 2913.02(A)(2), 2913.02(B)(5) | Rex Hilliard | February 1, 2018 to July 23, 2018: obtained/exerted control over Ford F250 | Dismissed by appellee | |
| 9 | Theft, R.C. 2913.02(A)(1), 2913.02(B)(2) | Rex Hilliard | February 1, 2018 to November 19, 2019, obtained/exerted control over $1500 value in "tires and kickplate" | Dismissed by appellee | |
| 10 | Improper use of certificate of title, R.C. 4505.19(A)(2), 4505.19(B) | | February 1, 2018 to June 4, 2018: failed to deliver certificate of title | Dismissed by appellee | |
| *11* | *Grand theft of a motor vehicle; R.C. 2913.02(A)(2), 2913.02(B)(5)* | *Keith Laughlin* | *June 12, 2017 to December 18, 2018, obtained/exerted control over 2008 Ford F350* | *Not guilty* | |
| *12* | *Theft; R.C. 2913.02(A)(1), 2913.02(B)(2)* | *Keith Laughlin* | *July 1, 2019 to November 19, 2019, obtained/exerted control over $3100* | *Not guilty* | |
| 13 | Grand theft of a motor vehicle; R.C. 2913.02(A)(2), 2913.02(B)(5) | Weston McAfee | July 1, 2017 to December 18, 2018, obtained/exerted control over 2008 Ford F350 | Not guilty | |
| 14 | Theft; R.C. 2913.02(A)(1), 2913.02(B)(2) | Weston McAfee | | Not guilty | |
| *15* | *Grand theft of a motor vehicle;* | *Matthew Ratcliff* | *June 15, 2018 to November 19,* | *Not guilty* | |

| | | | | | |
|---|---|---|---|---|---|
| | R.C. 2913.02(A)(2), 2913.02(B)(5) | | 2019, obtained/exerted control over 2006 Chevy Silverado | | |
| *16* | *Theft; R.C. 2913.02(A)(1), 2913.02(B)(2)* | *Mathew Ratcliff* | *June 15, 2018 to November 19, 2019, obtained/exerted control over $4500* | *Not guilty* | |
| 17 | Passing bad checks, R.C. 2913.11(B) and (F) | KN Excavation LLC | Issued check no. 1023 in amount of $15,000 dated June 22, 2018, knowing it would be dishonored | Guilty of 1st degree misdemeanor | Merges with Count 18 |
| 18 | Grand theft, R.C. 2913.02(A)(2), 2913.02(B)(2) | KN Excavation LLC | April 27, 2018 to September 25, 2018, obtained/exerted control over $15,000 | Guilty | 18 months |
| 19 | Improper use of certificate of title, R.C. 4505.19(A)(2) and (B) | Bretton Lambert | | Guilty | 2 years |
| *20* | *Grand theft of a motor vehicle; R.C. 2913.02(A)(2), 2913.02(B)(5)* | *Jeffrey Schwender* | *August 1, 2018 to November 19, 2019, obtained/exerted control over 2005 Dodge 3500* | *Not guilty* | |
| *21* | *Theft; R.C. 2913.02(A)(1), 2913.02(B)(2)* | *Jeffrey Schwender* | *August 1, 2018, to November 19, 2019, obtained/exerted control over $5000* | *Not guilty* | |
| 22 | Theft; R.C. 2913.02(A)(1), 2913.02(B)(2) | Auto Palace | October 16, 2019, obtained/exerted | Not guilty | |

| | | (Carl Frabott) | control over vehicle dealer plate | | |
|---|---|---|---|---|---|

{¶29} The matter proceeded to trial by jury and appellant was found guilty upon Counts 3, 5, 6, 7, 17, 18, and 19. He was found not guilty upon the remaining counts. Appellant was found guilty of Count 17 as a misdemeanor of the first degree. The trial court found Counts 17 and 18 merge, and Counts 6 and 7 merge. The remaining counts do not merge. Further, the sentences upon Counts 3, 5, 18, and 19 are to be served consecutively, for a total aggregate prison term of seven and a half years.

{¶30} Appellant was further ordered to pay a total restitution amount of $22,054.17 plus 5 percent poundage through the Clerk of Court. The trial court itemized the restitution as $6500 to Jacob Hillyer; $539.17 to Bob Boyd; and $15,015.00 to KN Excavation LLC.

{¶31} Appellant raises six assignments of error:

**ASSIGNMENTS OF ERROR**

{¶32} "I. NEWMAN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

{¶33} "II. THERE IS INSUFFICIENT EVIDENCE BEHIND THE JURY FINDING OF GUILT AGAINST NEWMAN, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶34} "III. THE JURY'S FINDINGS OF GUILT AGAINST NEWMAN ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE DUE

PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶35} "IV. THE TRIAL COURT IMPROPERLY SENTENCED NEWMAN BASED ON CONDUCT FOR WHICH NEWMAN DENIED AND WAS NOT CONVICTED, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶36} "V. THE TRIAL COURT ERRED WHEN IT SENTENCED NEWMAN TO PRISON, INSTEAD OF COMMUNITY CONTROL, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION."

{¶37} "VI. THE TRIAL COURT UNLAWFULLY ORDERED NEWMAN TO SERVE CONSECUTIVE SENTENCES FOR HIS OFFENSES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

## ANALYSIS

### I.

{¶38} In his first assignment of error, appellant argues he received ineffective assistance of counsel on several bases.  We disagree.

{¶39} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶40} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶41} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

*Evidence of unlicensed vehicle sales*

{¶42} First, appellant asserts he received ineffective assistance of trial counsel because counsel allowed admission of "other-acts evidence," to wit: a license is required to sell vehicles pursuant to R.C. 4517.02, and appellant didn't have one. Brief, 11. Appellant argues counsel should have objected to the unlicensed-sales evidence because he wasn't charged with selling vehicles without a license. Upon our review of

the record, though, the unlicensed-sales evidence was key to both parties' cases. As appellee points out, the issue at trial was appellant's intent: was he a naïve businessman ignorant of basic principles of operation of an auto repair and "sales" business, or did he deliberately create the appearance of a joint auto repair-sales operation to take maximum advantage of his customers and extract as much value from them as possible?

{¶43} It is uncontroverted that appellant did not possess a license to sell vehicles. Appellant exploited this fact at trial as evidence of his sloppy business practices surrounding his attempts to "flip trucks." The unlicensed-sales evidence also furthered appellant's claims that he was an unlicensed salesperson for a dealership called "River's Edge" but he mistakenly believed he could get the vehicle titles after the vehicles were sold.

{¶44} The unlicensed-sales evidence is not "other-acts" evidence. Appellant fails to reveal how the licensing issue is inadmissible and objectionable. Evid.R. 404(B) states in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * * *." The Rule is in accord with R.C. 2945.59, which states:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or

system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶45} In the instant case, we decline to speculate what the basis of defense trial counsel's objection should have been; the unlicensed-sales evidence was not offered as character evidence. We also note appellant has not assigned as error the admission of this evidence by the trial court, which might have clarified his argument.

{¶46} Appellant's tangible issue with the unlicensed-sales evidence seems to be that it was "prejudicial" to appellant. Brief, 11-12. In *State v. Morgan*, 5th Dist. No. 18CA121, 2019-Ohio-2785, 140 N.E.3d 171, at ¶ 36, we cited the decision of the Ohio Supreme Court in *State v. Crotts:*

> As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable. 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23.

{¶47} Appellant's argument with the unlicensed-sales evidence is best described as an objection to defense trial counsel's trial strategy. At trial, appellant used the

unlicensed-sales evidence as further proof of his bad business practices, although it strains credulity that someone who sold vehicles in the volume claimed by appellant was ignorant of a basic tenet of dealing in vehicles.

{¶48} We decline to find trial counsel ineffective on the basis of the unlicensed-sales evidence. It is well-established that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Harris*, 5th Dist. Richland No. 15CA9, 2015-Ohio-5400, ¶ 59, citing *State v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643, 1995-Ohio-171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Id.* A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Vales*, 2020-Ohio-245, 143 N.E.3d 577, ¶ 40 (5th Dist.), citing *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. *Id.* When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *Vales,* supra, citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶49} Moreover, even if there was any error in failing to object to the unlicensed-sales evidence, the record supports appellee's assertion that appellant was not prejudiced. The jury asked the trial court whether the licensing issue was germane to the counts of improper use of a certificate of title, and in response "the trial court instructed the jury to only consider whether appellant was authorized or able to transfer ownership of title," as appellant acknowledges. Brief, 11. The jury is presumed to follow the instructions of the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313

(1990), paragraph four of the syllabus. Appellant has not pointed to any evidence in the record that the jury failed to do so in this case.

{¶50} Appellant has failed to establish ineffective assistance of counsel regarding appellant's lack of a license to sell vehicles.

*Statements of Max Curry in BMV investigation*

{¶51} Second, appellant argues defense trial counsel was ineffective in failing to object to a ruling of the trial court, in which the trial court sustained appellee's objection to appellant's question. Max Curry was a car dealer for whom appellant claimed he worked as a type of "agent" in selling trucks. Defense trial counsel asked the BMV investigator whether Max Curry was under investigation and she assented; counsel then attempted to ask her about statements Curry made during the separate investigation. Appellee objected to the line of questioning and the trial court sustained the objection.

{¶52} Appellant now asserts defense trial counsel was ineffective in failing to object to the trial court's decision to sustain the objection. Appellant's only argued basis for such an objection is that the information was "pertinent to [his] defense." Again, we note the trial court's decision sustaining the objection is not assigned as error.

{¶53} There was no proffer of the BMV witness's disallowed testimony, but appellant argues the testimony would have potentially exculpated him. Again, we decline to speculate what the testimony would have been, and whether it would have been admissible. *See, State v. Hendershot*, 5th Dist. Licking No. 99-CA-102, 2001 WL 46235, *5. Appellant's claim with respect to both performance and prejudice rests on mere speculation, and "[s]uch speculation is insufficient to establish ineffective assistance." *State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 119, citing

*State v. Perez,* 124 Ohio St.3d 122, 2009–Ohio–6179, 920 N.E.2d 104, ¶ 217; *State v. Were,* 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263, ¶ 219; *State v. Elmore,* 111 Ohio St.3d 515, 2006–Ohio–6207, 857 N.E.2d 547, ¶ 121.

{¶54} Assuming, arguendo, that trial counsel's performance was deficient, we find that appellant has failed to prove that there exists a reasonable probability that, if the testimony was allowed, the result of the trial would have been different.

*Purported basis to request recusal of trial court*

{¶55} Finally, appellant argues defense trial counsel should have moved for recusal of the trial court because the same judge recused himself from a civil case involving appellant. Appellant assumes a conflict of interest existed because the trial court had a conflict of interest in the civil case.

{¶56} A judge is presumed to be unbiased and unprejudiced over the matters in which he presides. S*tate v. Ray,* 5th Dist. Richland No. 2019 CA 0034, 2020-Ohio-1265, ¶ 14, citing *In re Disqualification of Olivito,* 74 Ohio St.3d 1261, 1263, 657 N.E.2d 1361 (1994). The appearance of any bias or prejudice on behalf of a judge must therefore be compelling to overcome the presumption of integrity. *Id.* Our review of the record does not reveal any evidence of prejudice or bias on the part of the trial judge. *Id.*

{¶57} Moreover, appellant asks us to take note of information outside the record, to wit, the judgment entry of recusal in the civil case. Appellant has not made this information part of the record. A claim requiring proof that exists outside of the trial record cannot appropriately be considered on a direct appeal. *Ray,* supra at ¶ 16, citing *State v. Hartman,* 93 Ohio St.3d 274, 299, 754 N.E.2d 1150 (2001).

{¶58} We find counsel was not ineffective in failing to seek recusal of the trial court.

{¶59} Appellant has not established ineffective assistance of defense trial counsel and his first assignment of error is overruled.

## II., III.

{¶60} Appellant's second and third assignments of error are related and will be considered together. Appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶61} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶62} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

*Improper use of certificate of title*

{¶63} Appellant was convicted of three counts of improper use of certificate of title pursuant to R.C. 4505.19(A)(2). That section states: "No person shall * * * *[p]urport to sell or transfer a motor vehicle without delivering to the purchaser or transferee of it a certificate of title, a salvage certificate of title, or a manufacturer's or importer's certificate to it, assigned to the purchaser as provided for in this chapter, except as otherwise provided in this chapter." In support of his argument, appellant cites his own self-serving testimony that in the Gorby and Hillyer transactions he was essentially acting as an agent for Max Curry, and in the Lambert transaction, KN Excavation owned the truck and it was their responsibility to transfer title to the buyer.

{¶64} To convict a defendant of selling a motor vehicle without a title, the state must prove that the defendant did purport to sell or transfer a motor vehicle without delivering to the purchaser or transferee a certificate of title. See R.C. 4505.19(A)(2). Under this statute, one "purport[s] to sell" when he gives "the appearance of selling an automobile [by implying he can legally transfer title] when a valid sale cannot in fact be made due to the transferor's lack of ownership." *State v. Simpson*, 9th Dist. Summit No. 21475, 2004-Ohio-602, ¶ 16, citing *State v. Napier*, 12th Dist. No. CA91-10-089 (July 20, 1992). Appellee must have shown appellant implied to the victims that he had the right to

transfer ownership of the vehicles, but he could not legally do so under the circumstances. *Id.*

{¶65} In reviewing the entire transcript and all of the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence of each element of the offenses to find appellant guilty beyond a reasonable doubt; specifically, there was sufficient evidence of appellant's personal knowledge and involvement to sustain the trial court's judgment. *State v. O'Black*, 3rd Dist. Allen No. 1-10-25, 2010-Ohio-4812, ¶ 14.

{¶66} In the Hillyer transaction, the victim bought a truck from appellant after answering his ad on Facebook Marketplace. The ad stated the truck's title was "clean and clear." Hillyer paid appellant for the truck, and then received a litany of excuses from appellant as to why he failed to produce the title. Appellee presented evidence that appellant was never the legal owner of the truck.

{¶67} In the Gorby transaction, the victim purportedly bought a truck from appellant and received a bill of sale on appellant's letterhead. Gorby ultimately paid appellant $25,000 and the truck went back and forth between the parties for various "repairs." Ultimately the truck disappeared from appellant's lot because it was allegedly stolen, although no police report was made. Again, appellant held himself out as someone with authority to sell the truck, as established by his text messages with Gorby. B.M.V. records indicated appellant never owned the truck or had authority to sell it. Ultimately, Gorby was left without the title and the truck.

{¶68} Regarding the Bretton Lambert/KN Excavation transaction, Lambert responded to appellant's Facebook ad and his texts with appellant were entered into evidence. Lambert ultimately bought the truck, writing two cashier's checks to appellant's

wife at appellant's direction. Appellant told him he couldn't provide the title until the cashier's check cleared. The truck had temporary tags on it which expired in 45 days, and appellant made various excuses why he couldn't provide the title. Appellant didn't have the title because the legal owner—KN Excavation—didn't know the truck had been sold. Ultimately Lambert obtained title from Nathan Otto of KN Excavation, the legal owner of the truck.

{¶69} Appellant essentially argues he acted as an agent for others in each of these transactions, but appellee's evidence established that he held himself out to the purchasers as having legal authority to deliver title to the vehicles. In each case, he failed to do so. We also do not find that the guilty verdicts were against the manifest weight of the evidence. Although appellant proffered self-serving testimony clumsily attempting to explain away his transactions, the testimony was contradicted by appellee's witnesses and documentary evidence. *State v. O'Black*, 3rd Dist. Allen No. 1-10-25, 2010-Ohio-4812, ¶ 19. Even if an accused offers an innocent explanation for his conduct, "a jury is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances." *Id.,* citing *State v. Rollison,* 3d Dist. No. 9-09-52, 2010-Ohio-2162, ¶ 27, internal citation omitted. Furthermore, the trier of fact was in the better position to judge the credibility of the witnesses.

{¶70} Appellant's convictions for improper use of a certificate of title are supported by sufficient evidence and are not against the manifest weight of the evidence.

*Passing bad checks and theft—Bob Boyd Ford*

{¶71} Appellant was found guilty upon one count of passing bad checks pursuant to R.C. 2913.11(B)[1] and one count of petty theft pursuant to R.C. 2913.02(A)(1)[2] regarding the transaction with Bob-Boyd. The jury was also given a complicity instruction regarding each of these counts. Appellant asserts, though, that he is not guilty because his wife signed the bad check and he had no criminal intent, i.e., he intended to pay the check. At trial, appellant offered the excuse of the lockout from his business as a reason for failing to cover the check.

{¶72} Appellee's evidence established that Bob Boyd Ford received two orders for truck parts which were delivered to Newman Auto; Bob Boyd received a check in the amount of $539.17 from Newman Auto & Performance dated July 31, 2018, but the check didn't clear.

{¶73} The parts manager of Bob Boyd repeatedly called appellant directly regarding the bad check, and appellant promised to pay but failed to follow through or show up for appointments. On September 13, 2018, law enforcement provided notice of dishonor. Appellee's evidence is sufficient to support the verdict of guilty of passing bad checks and theft, and the verdict is not against the manifest weight of the evidence.

---

[1] R.C. 2913.11(B) states, "No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument."

[2] R.C. 2913.02(A)(1) states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."

*Passing bad checks and theft—KN Excavation LLC*

{¶74} Appellant was found guilty upon one count of passing bad checks pursuant to R.C. 2913.11(B) and one count of felony theft pursuant to R.C. 2913.02(A)(1) regarding the transaction with KN Excavation, LLC. The jury was also given a complicity instruction regarding each of these counts. Appellant asserts merely that when he wrote the check to KN Excavation LLC, "he had expected to receive money in his account to cover the check." Brief, 17. This assertion does not mean appellant had no criminal intent, and is also belied by the fact that he wrote a postdated check.

{¶75} Moreover, appellee's evidence showed the efforts KN Excavation, LLC, Nathan Otto, and the Fairfield County Sheriff's Department to give appellant notice of dishonor and attempts to get appellant to cover the check. They were met with only excuses.

{¶76} In *State v. Bound*, 5th Dist. Guernsey No. 03 CA 21, 2004-Ohio-6530, at ¶ 39, we noted the state established a prima facie case of intent to defraud when the account contained no funds and defendant knew the account was closed, and there is sufficient, competent credible evidence presented concerning each element of the crime of passing bad checks when the defendant knew the account did not have sufficient funds. *Id.*, citing *State v. Lyons*, 5th Dist. Holmes No. CA-476, 1993 WL 437740 (Oct. 13, 1993) and *State v. Smith*, 5th Dist. Stark No. 2002CA00306, 2003-Ohio-2033 (Apr. 21, 2003).

{¶77} In the instant case, the uncontroverted evidence demonstrated appellant wrote the check to KN Excavation, LLC; the check remained unpaid; appellant received verbal and written notice from KN Excavation and Det. Nicolia that the check had been dishonored; finally, the check remained unpaid and was not discharged by payment or

satisfaction within ten days. *Bound*, supra, at ¶ 40. The uncontroverted evidence further demonstrated that appellant knowingly deprived KN Excavation of $15,000.

{¶78} In order to convict appellant of theft, appellee needed to prove that appellant, either as a principal offender or as an accomplice, knowingly deprived KN Excavation LLC of their property, without their consent, or beyond the scope of the express or implied consent of the owner. *State v. Johnson*, 5th Dist. Stark No. 2009CA00303, 2010-Ohio-5703, ¶ 22.

{¶79} The cited evidence, viewed in the light most favorable to appellee, provided sufficient evidence to support appellant's conviction. Moreover, as a reviewing court on a manifest weight claim, we do not find that the jury clearly lost its way in convicting appellant of theft. *Johnson*, supra, ¶ 27.

{¶80} We also note that the jury convicted appellant of some counts and acquitted him of others. The jury was clearly able to evaluate the evidence and witnesses and did not lose its way.

{¶81} Appellant's second and third assignments of error are overruled.

IV.

{¶82} In his fourth assignment of error, appellant summarily argues that the trial court improperly sentenced him for conduct which he was not convicted. We disagree.

{¶83} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for sentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D),

2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

{¶84} Clear and convincing evidence is evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.*

{¶85} "R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of sentencing[.]" *State v. Harris*, 5th Dist. Muskingum No. CT2019-0075, 2020-Ohio-4600, ¶ 32. The first is to protect the public from future crime by the offender and others, and the second is to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. *Id.* The sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar offenders." R.C. 2929.11(B).

{¶86} "R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C.2929.11." *Harris* at ¶ 33. These factors include the physical or mental injury suffered by the victim due to the age of the victim; the physical, psychological, or economic harm suffered by the victim; whether the offender's relationship with the victim facilitated the offense; the defendant's prior criminal

record; whether the defendant was under a court sanction at the time of the offense; whether the defendant shows any remorse; and any other relevant factors. R.C. 2929.12(B). R.C. 2929.12(C) provides factors a court must consider indicating the offender's conduct is less serious than conduct normally constituting the offense, including mitigating factors. R.C. 2929.12(D) & R.C. 2929.12(E) set forth factors bearing on whether the offender is likely or not likely to commit future crimes.

{¶87} In the instant case, appellant summarily asserts the trial court improperly sentenced him based upon "those individuals pertaining to charges for which [appellant] was acquitted (*sic*)," and "considered that [appellant] was conducting business related to his auto repair shop while he was in jail." Although appellant has not given us the benefit of citation to the record, we note the trial court was concerned with the number of victims in the charged offenses. T. Sentencing, 51. The trial court stated its concern with restitution for appropriate victims. The trial court cited appellant's "propensity for deceit" and his pattern of "robbing Peter to pay Paul." T. Sentencing, 53, 55.

{¶88} The record established that the trial court considered the purposes and principles of sentencing as well as the seriousness and recidivism factors set out in R.C. 2929.11 and R.C. 2929.12, respectively. Upon review, we do not find clear and convincing evidence that the record does not support the trial court's findings or that the sentence is contrary to law. The sentences are within the statutory ranges and the trial court considered the appropriate statutory factors.

{¶89} Appellant's fourth assignment of error is overruled.

V.

{¶90} In his fifth assignment of error, appellant argues the trial court erred in sentencing him to a prison term instead of community control. We disagree.

{¶91} Again, we review the imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), governing all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. An appellate court may modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶ 36.

{¶92} Thus, this court may "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, 54 N.E.3d 1217, ¶ 1.

{¶93} Appellant argues a term of community control is more consistent with the purposes and principles of felony sentencing pursuant to R.C. 2929.11 and the record does not support appellant's prison term pursuant to R.C. 2929.12. Appellant argues he was acquitted of the most serious offenses, was unable to make restitution only because

his bank accounts were seized, and was remorseful. Moreover, serving a prison term prevents him from working an available job and paying restitution.

{¶94} We note, however, appellant continued to make excuses for himself at sentencing, blaming his criminal offenses on bad luck and naivete. T. Sentencing, 45-46. Despite appellant's assertions, we find no expression of genuine remorse in the record, nor has appellant cited any examples thereof. The trial court noted the victims are out thousands of dollars, and some still never recovered operable vehicles. The trial court noted appellant's "propensity for deceit" and the simple fact that appellant took cash from the victims then lied repeatedly.

{¶95} We do not find appellant's sentence to be clearly and convincingly contrary to law or unsupported by the record. *State v. Hiles*, 5th Dist. Muskingum No. CT2020-0039, 2021-Ohio-685, ¶ 17, citing *Brandenburg*, supra, 2016-Ohio-2970, ¶ 1.

{¶96} The fifth assignment of error is overruled.

VI.

{¶97} In his sixth assignment of error, appellant argues the trial court erred in sentencing him to consecutive prison terms.

{¶98} Again, R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 ¶1. Pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b).

{¶99} R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the courts finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶100}    "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, syllabus. In other words, the sentencing court does not have to perform "a word-for-word recitation of the language of the statute." *Id.* at ¶29. Therefore, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* If a sentencing court fails to make the findings required by R.C. 2929.14(C)(4), a consecutive sentence imposed is contrary to law. *Id.* at ¶ 34. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37.

{¶101} During the sentencing hearing in the instant case, the trial court considered the purposes and principles of sentencing, as well as the seriousness and recidivism factors. The trial court found consecutive sentences are necessary to protect the public, to punish appellant, and are not disproportionate to the crimes he committed. The trial court made a specific finding pursuant to R.C. 2929.14(C)(4)(b), supra, that the multiple offenses were committed as part of more than one course of conduct and the harm caused by the multiple offenses, to wit, the "large value of money," is so great or unusual that no single prison term adequately reflects the seriousness of appellant's conduct.

{¶102} Upon our review of the record of the sentencing hearing and the judgment entry, the trial court engaged in the appropriate analysis and made the requisite findings. Therefore, we find the imposition of consecutive sentences in this case was not contrary to law.

{¶103} Appellant's sixth assignment of error is overruled.

## CONCLUSION

{¶104} Appellant's six assignments of error are overruled and the judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.